UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THERESA MILLER, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:19-CV-195 SRW |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 21. Defendant filed a Brief in Support of the Answer. ECF No. 24. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse and remand the Commissioner's decision.

**I.  Factual and Procedural Background**

On November 9, 2016,[1] Plaintiff Theresa Miller protectively filed an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 220-23. Plaintiff alleged she has been unable to work since January 1, 2007. Tr. 220. Plaintiff's application was

---

[1] The ALJ indicated Plaintiff filed her application for SSI on October 13, 2016; however, review of the record indicates the application was filed on November 9, 2016. Tr. 220.

1

denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 141, 151-52.

Plaintiff and counsel appeared for an initial hearing on July 25, 2018. Tr. 68-103. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. The ALJ also received testimony from Melinda Stahr, a vocational expert ("VE"). *Id*. On November 2, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 19-29. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which the Appeals Council denied on September 6, 2019. Tr. 1-4. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment. Therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application date. Plaintiff has the severe impairments of degenerative disk disease, osteoarthritis, chronic obstructive pulmonary disease, anxiety, and depression. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 21-22. The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. She must also avoid concentrated exposure to dust, smoke, odors, gases, poor ventilation, extreme cold, humidity, wetness, unprotected heights, and dangerous machinery. She is further limited to simple, routine tasks.

Tr. 24.

At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work. Tr. 27. Plaintiff's prior employment was a Hotel Cleaner, Machine Packager, Kitchen Helper or Prep Cook. Tr. 28. The ALJ further found Plaintiff was born on March 1, 1965, and was 51 years old on the date she filed the application, which is defined as an individual closely approaching

advanced age. Tr. 28. Plaintiff has at least a high school education and is able to communicate in English. Tr. 28. The ALJ determined that the transferability of job skills was not an issue because Plaintiff's past relevant work is unskilled. Tr. 28.

At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which Plaintiff could perform, including representative occupations such as Cashier, Small Products Assembler, and Handpacker. Tr. 29. The ALJ concluded Plaintiff was not under a disability between the application date and the date of his decision, November 2, 2018. Tr. 29.

**IV.    Discussion**

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ's RFC assessment is not supported by substantial evidence because the only medical evidence in support is an opinion of a non-examining state agency physician; (2) the ALJ improperly discounted Plaintiff's subjective complaints of pain, and (3) the ALJ erred by giving little weight to Plaintiff's treating physician's opinion. Because the Court remands on the basis of the ALJ's failure to explain his decision to discount Plaintiff's treating physician's opinion, the Court does not address Plaintiff's first two arguments.

    **A.    The Treating Physician's Opinion**

Plaintiff challenges the ALJ's decision to give Dr. Gary Goldstein's opinion little weight, arguing the ALJ did not address most of Dr. Goldstein's opinion and did not discuss whether his limitations are consistent with medical records.

Dr. Goldstein has been Plaintiff's pulmonologist since August 2015. Tr. 391. In July 2018, Dr. Goldstein completed a "Pulmonary Questionnaire" for Plaintiff's disability

application. Tr. 952-55. He listed Plaintiff's diagnoses as COPD (chronic obstructive pulmonary disease), OSA (obstructive sleep apnea), obesity, and tobacco dependence. Tr. 952. He identified Plaintiff's symptoms as shortness of breath, orthopnea, wheezing, episodic acute bronchitis, and coughing. *Id*. He estimated Plaintiff could walk two blocks without rest or severe pain, and she could sit for 30 minutes at one time and stand for 10 minutes at one time. Tr. 954. In total, he estimated she could sit for four hours and stand or walk for less than two hours out of an eight-hour workday. *Id*. He stated she would need to take at least five unscheduled breaks throughout the day for 10-15 minutes. *Id*. He found she could occasionally lift 10 pounds or less, and never lift 20 or 50 pounds. *Id*. Dr. Goldstein opined she could occasionally twist, and rarely stoop, crouch/squat, climb ladders, or climb stairs. *Id*. He believed she should avoid even moderate exposure to extreme cold, extreme heat, high humidity, wetness, perfumes, soldering, solvents/cleaners, and chemicals, and should avoid all exposure to cigarette smoke, fumes, odors, gases, and dust. Tr. 955. Finally, he opined she would be absent approximately three days per month due to her impairments or treatment. *Id*.

The ALJ gave Dr. Goldstein's opinion little weight. Tr. 26. The entirety of the ALJ's reasoning is as follows:

> The undersigned accords this opinion little weight. Dr. Goldstein's primary explanation for the extreme limitations provided was that the claimant had shortness of breath. However, the pulmonary function tests performed by this same provider on multiple occasions showed only mild abnormalities. It was not until a recent June 2018 examination that this condition was even considered moderately severe. This recent examination still does not meeting (sic) listing-level findings and is inconsistent with such a severe restriction in sitting, standing, and walking.

Tr. 26-27.

Opinions by treating physicians are given controlling weight if "well-supported by the medical evidence and 'not inconsistent with the other substantial evidence in [the] case record.'" *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018) (quoting 20 C.F.R. §§

7

404.1527(c)(2), 416.927 (2015)). Whatever weight an ALJ gives the opinion of a treating physician, he must give good reasons for doing so. *Id*. "This requires the ALJ to explain in his written decision, with some specificity, why he has rejected the treating physician's opinion." *Id*. "Failure to do so is reversible error." *Id*.

Here, the ALJ did not give good reasons for discounting Dr. Goldstein's opinion. If an ALJ does not give a treating source controlling weight, then he must consider the following factors in deciding what weight to give the opinion: (1) whether the source examined the claimant; (2) the treatment relationship which includes the length of the relationship, frequency of examination, and the nature and extent of the relationship; (3) relevant supporting evidence; (4) consistency with the record as a whole; (5) specialization; and (6) any other factors to support or contradict the opinion. 20 C.F.R. § 416.927(c). The only one of these factors the ALJ discussed, and only minimally, is the opinion's consistency with Plaintiff's older pulmonary function tests. Tr. 26-27. The ALJ did not discuss Dr. Goldstein's opinion's consistency with any of the other medical evidence, such as the three years of treatment notes from Dr. Goldstein, or its consistency with Plaintiff's own testimony.

Plaintiff's own testimony supports Dr. Goldstein's opinion. At her hearing in July 2018, Plaintiff testified her ankle and back pain causes most of her problems. Tr. 77. She has drop foot and wears a brace on her right foot. Tr. 78 & 92. She can stand for about 15 minutes in one spot, but standing is much more painful than sitting. Tr. 81. She has problems sitting for more than 30 minutes. Tr. 79-80. Plaintiff testified she can walk to her driveway or from the front door to her car, but then she needs to sit down and take a breath. Tr. 82. She estimates she can walk about 50 yards. Tr. 82. The trailer she lives in is fourteen feet long, and if she walks out the front door and

8

around to the back, she needs to sit down. Tr. 82. She uses a motorized cart while grocery shopping. Tr. 77. She cannot lift a gallon of milk, a can of paint, or a watermelon. Tr. 83 & 88. Plaintiff can no longer cook on the stove because she cannot stand long enough to do so. Tr. 77. She often gets short-winded while standing. *Id*. She does the dishes every day, but it takes her about an hour because she takes breaks every 15 minutes. Tr. 90. She cannot dust or do housework, and she has a friend help her do the laundry. Tr. 81. She puts the clothes in the washer, but her friend helps take them out. Tr. 85 & 90. Exertion and heat affect her breathing so she needs help getting groceries out of the car. Tr. 83.

The ALJ found Plaintiff capable of performing light work, with a long list of limitations. "Light work" "requires a good deal of walking or standing." 20 C.F.R. § 416.967(b). It requires the claimant be capable of standing or walking for a total of six hours out of an eight-hour workday. *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995) (citing Social Security Ruling 83–10); *Carter v. Sullivan,* 909 F.2d 1201, 1202 (8th Cir.1990); *Allen v. Sullivan,* 977 F.2d 385, 389 (7th Cir.1992)). However, Dr. Goldstein opined Plaintiff could sit for four hours and stand or walk for less than two hours out of an eight-hour workday. Tr. 954. He stated she would need to take at least five unscheduled breaks throughout the day for 10-15 minutes. *Id*. Dr. Goldstein's opinion is well supported by Plaintiff's testimony.

Plaintiff does some physical therapy exercises on her own but finds it usually makes the pain worse. Tr. 80. She takes ibuprofen and Advil once in a while but does not take any prescription medication because she fears becoming addicted. *Id*. Her son has an addiction to prescription medication, so she is trying to set an example for him. *Id*. Plaintiff testified the pain is present all the time and often wakes her up in the night. Tr. 83-84. On a good day, she rates her pain as a six out of ten. Tr. 84. When she was taking pain medication, it helped, but never

took all of the pain away. Tr. 89. She uses oxygen daily and even sleeps with it. Tr. 91. Plaintiff has a large oxygen machine and has it set to three liters. Tr. 91-92. The ALJ never discussed Plaintiff's testimony in relation to Dr. Goldstein's opinion.

Furthermore, as Plaintiff points out, the ALJ only addressed Dr. Goldstein's restrictions for sitting, standing, and walking. Tr. 27. Nowhere in the decision does the ALJ address Dr. Goldstein's opinion Plaintiff needs at least five breaks a day for 10 to 15 minutes, his lifting restrictions, or his restrictions for exposure to various airborne contaminants. The ALJ's analysis of Dr. Goldstein's opinion falls short of what is required by the regulations and case law necessitating a remand. On remand, if the ALJ decides not to give controlling weight to Dr. Goldstein's opinion, the ALJ must explain "with some specificity" why it chose not to do so. *Walker*, 911 F.3d at 553. The ALJ must give "good reasons" for his findings. *Id*.

These good reasons must be based on Plaintiff's current medical condition, not on old medical reports. *Frankl*, 47 F.3d at 938. *Frankl* concluded the ALJ improperly relied on August and September 1990 medical progress notes in order to discredit the claimant's complaints of fatigue to the exclusion of subsequent medical, nonmedical, and testimonial evidence that was consistent with the claimant's complaints of fatigue at the time of the hearing. *Id.* (citing *Morse v. Shalala*, 32 F.3d 1228, 1230-31 (8th Cir. 1994) (the ALJ relied on an old medical report and gave no weight to subsequent supporting evidence, including the treating physician's progress notes showing continued pain consistent with the claimant's subjective complaints)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for reevaluation of Dr. Goldstein's opinion. A separate judgment will accompany this Memorandum and Order.

So Ordered this 23rd day of November, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**